DECISION
{¶ 1} James M. Coit, defendant-appellant, appeals the judgment of the Franklin County Court of Common Pleas, wherein the court found appellant guilty of felonious assault, in violation of R.C. 2903.11, a second-degree felony.
 {¶ 2} During appellant's trial, he and the victim, Sadie Nelson, gave differing accounts of the facts underlying the events that lead to the criminal charges in this case. Their differing accounts will be explored more fully in addressing appellant's assignments of error. Generally, it is agreed that on August 3, 2001, appellant was driving down Spring Street in Columbus, Ohio, when he saw Sadie, who was on her way to get a meal at the Faith Mission, walking down the street. Appellant picked up Sadie, and the two eventually ended up in an empty parking lot nearby. Appellant alleges it was decided that Sadie would perform various sexual acts on him for thirty dollars. Appellant also alleges that Sadie became angry when he did not warn her of an oncoming car, she refused to continue performing, and she attempted to leave the vehicle with his money. Sadie contends that after promising to drive her to the Faith Mission, appellant instead drove to the parking lot and threatened that if she did not take off her clothes, he was going to hit her with some nearby bricks. It is undisputed that at some point an argument ensued, during which appellant threw at least one brick at Sadie. Appellant claims the brick went over Sadie's head, while Sadie claims at least one brick struck her in the leg.
 {¶ 3} On September 4, 2001, appellant was indicted on one count of aggravated robbery, two counts of robbery, one count of kidnapping, one count of abduction, and one count of felonious assault. On February 24, 2001, a jury trial commenced. Sadie; Patrick McHenry, a Columbus police officer; Jason Pappas, a Columbus police detective; Tony Williams, the director of residence services for Faith Mission; and David McKee, a Columbus police detective, testified on behalf of the state. Susan Weyrick, human resources administrator for the Ohio Exposition Commission, and appellant testified for the defense. The jury found appellant not guilty of aggravated robbery, two counts of robbery, kidnapping, and abduction, but found him guilty of felonious assault, in violation of R.C. 2903.11, a second-degree felony. On March 6, 2002, appellant was sentenced to three years incarceration with jail-time credit. Appellant appeals the judgment of the trial court, asserting the following two assignments of error:
 {¶ 4} "[I.] The trial court erred when it entered judgment against the defendant, when the evidence was insufficient to sustain a conviction and was not supported by the manifest weight of the evidence.
 {¶ 5} "[II.] The trial court commits reversible error by allowing the opinion testimony of a police officer as to the origin of the alleged victim's wound, in violation of Ohio Rule of Evidence 701 and in violation of appellant's right to a fair trial under the State and Federal Constitutions."
 {¶ 6} Appellant argues in his first assignment of error the trial court's judgment was based upon insufficient evidence and against the manifest weight of the evidence. The test for sufficiency of the evidence was set forth in State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus, wherein the Ohio Supreme Court stated:
 {¶ 7} "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt."
 {¶ 8} In the present case, appellant was found guilty of felonious assault, in violation of R.C. 2903.11, which provides, in pertinent part:
 {¶ 9} "(A) No person shall knowingly do either of the following:
 {¶ 10} "* * *
 {¶ 11} "(2) Cause or attempt to cause physical harm to another or to another's unborn by means of a deadly weapon or dangerous ordnance."
 {¶ 12} Appellant argues that there was insufficient evidence to prove that he knowingly attempted or did hit Sadie in the leg with the brick. He contends that the evidence demonstrates that Sadie fell on a bush and scraped her thigh. Sadie testified that she was walking to the Faith Mission when a nice, clean-cut, handsome, African-American young man drove by and smiled and waved to her. She stated that she had never seen the man before that day. She said he drove by again and asked where she was going. She told him she was going to the Faith Mission to get something to eat, and he said he was going there too. The man told her she was "cute," paid her some compliments, and offered her a ride, which she accepted.
 {¶ 13} She testified that instead of going to the Faith Mission, however, he pulled into a parking lot and got out of the car. While she was still in the car, appellant picked up two bricks and told her that if she did not take off her clothes, he was going to hit her with the bricks. Sadie said she got out of the car, started to back up, and then tried to run away. She testified that he began throwing bricks at her, which hit her, and she tripped near a tree. While she was on the ground, appellant tried to grab her purse and reached into her clothes and ripped her bra. She tried to spray him with pepper spray, but he did not stop. She said he pounded her hands with a brick and eventually pulled her purse away from her. After appellant picked up some of the bricks he had thrown and put them in his car, Sadie got up from the ground, flagged down a passing car, and called the police. Appellant then drove away. She also testified that she had bruises and a cut on her leg from the brick. The state presented photographs of Sadie's cut leg and torn bra. Sadie also said she was not a prostitute, and she had never exchanged sex for money.
 {¶ 14} On cross-examination, Sadie denied that she had previously performed sex acts on appellant in exchange for money. She also denied that she knew appellant prior to this incident or that appellant offered her twenty dollars to perform oral sex on him that day. She further denied that appellant had ever taken her to a "crack house" to buy cocaine.
 {¶ 15} Patrick McHenry, a Columbus police officer, testified that he received an anonymous call in which the caller stated a female claimed she had been robbed and gave a description of the perpetrator's vehicle. Although Officer McHenry could not find the vehicle, he went to the scene and found Sadie upset, angry, and scared. He testified that she told him she had been walking to the Faith Mission to get a free meal when a man drove up beside her and asked if she needed a ride. She told Officer McHenry she got into the vehicle, but the man drove her to a parking lot. Sadie then told the officer that appellant got out of the car, retrieved two bricks, and told her to remove her clothing. Officer McHenry testified that Sadie then told him she got out of the car to run away, and appellant threw bricks at her. She also told Officer McHenry that she fell, appellant hit her hands with a brick, and then took her purse. She told him appellant picked up the bricks he had thrown, put them in his car, and fled. Sadie then flagged down another motorist to call the police.
 {¶ 16} Jason Pappas, a Columbus police detective, also testified. Sadie told him the same version of the incident that she had told Officer McHenry. Detective Pappas testified that, consistent with his five years as a detective and eleven years as an officer, Sadie's injuries were consistent with being struck by a brick. He stated that Sadie was unable to give him appellant's name, and indicated that she did not know her assailant.
 {¶ 17} Tony Williams, director of residence services for Faith Mission, testified as to the times the Faith Mission serves meals. He said it serves dinner to women from 5:30 to 6:15 p.m.
 {¶ 18} David McKee, a Columbus police detective, testified that appellant made a statement to the police after being arrested. The videotape of appellant's statement was then played for the jury. Appellant stated that he was driving when he saw a female walking down the street. Appellant alleged that the woman yelled at him and told him that she was trying to get to the Faith Mission. She asked him if he had any money, and he said he had a few dollars. He stated that they did not go to the Faith Mission, but ended up somewhere "near the freeway." When asked by the detective whether they went to have sex, appellant said no. Appellant said Sadie asked him for money, and he gave her some. He then asked her for it back, and she got mad. Appellant stated that the only money he took from Sadie was the money he had given her, he did not take her purse, and he did not hit her with his hands or a brick.
 {¶ 19} We find that the testimony and evidence, when viewed in a light most favorable to the prosecution, as we are required to do, could convince the average mind of appellant's guilt beyond a reasonable doubt. Although appellant attacks the credibility of Sadie's testimony, an appellate court does not weigh credibility under an insufficiency of the evidence argument. See Ruta v. Breckenridge-Remy Co. (1982),69 Ohio St.2d 66, 68-69. Sadie testified that appellant threw bricks at her and hit her with at least one brick. She stated that he did this after she refused to take off her clothes pursuant to his threat. We find that when viewing the evidence and the testimony of all the witnesses in a light most favorable to the state, a rational trier of fact could have found beyond a reasonable doubt that appellant knowingly caused or attempted to cause physical harm to Sadie by throwing bricks at her and striking her with them. Therefore, we find that there was sufficient evidence to convict appellant of felonious assault.
 {¶ 20} Having addressed appellant's arguments regarding sufficiency, we must turn our attention to his assertion that the convictions were against the manifest weight of the evidence. Though evidence may be sufficient to sustain a guilty verdict, the issue of manifest weight requires a different type of analysis. "Weight of the evidence concerns `the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other.'" (Emphasis sic.) State v. Thompkins (1997),78 Ohio St.3d 380, 387, quoting Black's Law Dictionary (6 Ed. 1990) 1594. In making its determination on this issue, the appellate court reviews the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the factfinder clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. Id., citing State v. Martin (1983), 20 Ohio App.3d 172, 175. Appellate courts are cautioned to sustain a manifest weight argument in exceptional cases only where the evidence "weighs heavily against the conviction." Id.
 {¶ 21} Appellant testified that on the date in question, he was driving down the road and a woman yelled at him. He stated that he turned the car around and went back to the woman, who was wearing a dress and a wig. The woman asked him for a ride to the Faith Mission. He said he agreed, but when they got close to the Faith Mission, they did not see anyone there. Appellant testified that Sadie told him she needed some money and that she would perform sex on him for money. He stated he did not tell the police this in his videotaped statement because he was scared. He testified that there was a discussion, and they agreed that he would pay her twenty dollars, which he did. After he got a condom from the back of the car, he came around to the passenger's side of the car. Appellant testified that he could not get an erection, so Sadie told him it would be an additional ten dollars to "help" him, which he then paid her. He also stated that she pulled up her dress.
 {¶ 22} Appellant stated that as Sadie was beginning to perform a sex act, a car drove by, and Sadie became angry because he did not warn her of the car. Sadie stopped, and appellant asked for his money back. Appellant testified that Sadie then started to leave. He again asked for his money back, but she started to back away and squirted pepper spray toward him. Appellant said that he retrieved a brick, and Sadie kept backing up. He said he thought she was going to run away with his money, so he threw the brick over her head to scare her. He then picked up some gravel and threw it at her. He said he bent down to get more gravel, and when he looked up, she had fallen on the ground. Appellant stated that he was not trying to hit her with the brick. After she fell down, he walked up to her, and she handed him his money. He also indicated that he did not see her with a purse, and he did not steal any money from her. Appellant stated that the scratches on her leg were from a bush she had struck when she fell.
 {¶ 23} On cross-examination, appellant stated that he had done this same type of thing with Sadie three times before, although he admitted he did not tell the police that or mention it in his direct testimony. He also admitted that despite his earlier statement, he knows the Faith Mission was still serving meals at the time he claimed they were not. He further admitted that in the picture taken at the scene and presented in court, Sadie was not wearing a dress as he had testified; she was wearing shorts. In addition, appellant testified that he did not tell the police in the videotaped statement that he was going to have sex with Sadie because he was embarrassed. He stated that the brick he threw over her head landed in the gravel lot, but police could not find it because they did not look for it there.
 {¶ 24} On redirect, appellant insisted Sadie was wearing a wig and a dress when he was with her. He also admitted that he put one brick in his car, but said he did not know why he did that. On recross-examination, he stated that the brick he put in his car was not the same brick he threw at Sadie.
 {¶ 25} The only other witness who testified on behalf of appellant was Susan Weyrick, human resources administrator for the Ohio Exposition Commission, where appellant was employed. However, she presented only records of appellant's paychecks and testified that she did not know appellant.
 {¶ 26} The record in the present case does not support a reversal on the basis that it was against the manifest weight of the evidence. Appellant argues that his testimony was more believable than Sadie's, and Sadie's testimony was full of contradictions. With regard to appellant's arguments in this respect, we note that appellant's brief contains several instances of extreme misrepresentation of Sadie's testimony. For instance, appellant's counsel claims that Sadie admitted on cross-examination that she had met appellant prior to the incident in question, contrary to her testimony on direct examination that she had never met him before. We assume appellant's counsel is referring to the following testimony:
 {¶ 27} "A. I met Mr. Coit one time, and it was a bad experience, one time that I can remember that I met Mr. Coit. All the rest of the stuff, you are all making it up."
 {¶ 28} However, it is crystal clear from the transcript that this "one time" she is referring to is the incident in question. Indeed, the very next question and response after this statement was the following:
 {¶ 29} "Q. All I need for you to do is to just answer yes or no.
 {¶ 30} "A. No, I don't know Mr. Coit. No, I have not been in Mr. Coit's presence other than the time that he assaulted me and took my money."
 {¶ 31} Appellant's counsel also claimed that Sadie even testified that Mr. Coit had hit her over the head several years prior to the incident and damaged her brain, thus making her eligible for social security. We can only assume appellant is referring to the following testimony elicited on redirect examination:
 {¶ 32} "Q. Since Ms. Younger has asked you about your disability, why are you on disability? Can you tell us a little bit about that?
 {¶ 33} "A. I was seeing another young man, and he beat me up. He stomped my head.
 {¶ 34} "Q. This was a number of years ago?
 {¶ 35} "A. '92, I think it was."
 {¶ 36} There can be no question whatsoever that this testimony indicated Sadie was injured by a man whom she had been dating several years ago. It is plainly obvious that this man was not appellant. Therefore, these arguments are unconvincing.
 {¶ 37} Appellant also points out several other alleged inconsistencies in Sadie's testimony that should render her credibility questionable. We find these to be without merit. Appellant points out that Sadie testified she was going to the Faith Mission, yet also testified she received food stamps. However, Sadie testified numerous times that she did not receive her food stamps until the fifth working day of the month, she was running out of money for food, and she often went to the Faith Mission or churches at the beginning of the month to supplement her meals. Appellant also questioned Sadie's testimony that she had bruises from the incident because neither the medics nor the crime scene detectives noted these. However, it would have been reasonable for the trier of fact to assume that the bruises would not necessarily appear so quickly as to be visible in the few minutes it took for the ambulance and police to arrive.
 {¶ 38} After reviewing the entire record, weighing the evidence and all reasonable inferences, we find that the jury did not clearly lose its way and create such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. Appellant's only argument is that his testimony was more credible than Sadie's testimony. However, "[t]he weight to be given the evidence and the credibility of the witnesses are primarily issues to be decided by the trier of fact." State v. Burdine-Justice (1998), 125 Ohio App.3d 707, 716. The trier of fact has the benefit of seeing and hearing the witnesses testify and is in the best position to determine the facts of the case. In re Good (1997), 118 Ohio App.3d 371, 377. In the present case, the jury apparently found Sadie's testimony credible. Further, we already addressed appellant's arguments regarding the claimed inconsistencies in Sadie's testimony and found them unpersuasive. In addition, although appellant claims that on a prior occasion he had driven Sadie to get cocaine at a "crack house," it is interesting to note that appellant never testified to this. This is not an exceptional case in which the evidence weighs heavily against the conviction. Therefore, appellant's conviction was not against the manifest weight of the evidence, and his first assignment of error is overruled.
 {¶ 39} Appellant argues in his second assignment of error the trial court erred by allowing Detective Pappas to testify as to the origin of the wound on Sadie's leg. Detective Pappas testified that, based upon his experience as a police officer and dealing with injuries caused by blunt objects, the cuts on Sadie's leg were consistent with being hit by a brick. A trial court has broad discretion in the admission and exclusion of evidence, and an appellate court must not interfere with its determination unless the trial court has clearly abused its discretion. State v. Apanovitch (1987), 33 Ohio St.3d 19, 25. The term "abuse of discretion" implies that the court's attitude is unreasonable, arbitrary, or unconscionable. State v. Adams (1980), 62 Ohio St.2d 151,157.
 {¶ 40} Under Evid.R. 701, a "lay opinion must be: (1) `rationally based on the perception of the witness,' i.e., the witness must have firsthand knowledge of the subject of his testimony and the opinion must be one that a rational person would form on the basis of the observed facts; and (2) `helpful,' i.e., it must aid the trier of fact in understanding the testimony of the witness or in determining a fact in issue." Lee v. Baldwin (1987), 35 Ohio App.3d 47, 49. In this case, Detective Pappas was testifying as a lay witness. We find his testimony was properly admitted under Evid.R. 701. Detective Pappas based his opinion on his experience as a police officer, familiarity with blunt force trauma, and past observations of wounds. Other courts have allowed police officers to testify pursuant to Evid.R. 701 under similar circumstances. In State v. Parker, Montgomery App. No. 18926, 2002-Ohio-3920, a detective was permitted to testify under Evid.R. 701 that two wounds were consistent with gunshot wounds that she had seen in the past, based upon twenty-two years of experience on the police force, experience with victims of gunshot wounds, and familiarity with different types of gunshot wounds. In State v. Whittsette (Feb. 13, 1977), Cuyahoga App. No. 70091, the court held that a police detective's testimony that he doubted a wound was caused by a .22 caliber gun was properly admitted under Evid.R. 701, based upon his familiarity with guns and past observances of gunshot wounds. In State v. Norman (1982), 7 Ohio App.3d 17, the court held that a police officer properly testified as a non-expert in regard to the shot pattern made by a 12-gauge shotgun. Upon review of the record in the present case, we conclude the detective's opinion was rationally based on his perception and experience and was directly relevant to the issues at hand. Therefore, the trial court did not abuse its discretion in admitting the testimony of Detective Pappas. Appellant's second assignment of error is overruled.
 {¶ 41} Accordingly, we overrule appellant's two assignments of error and affirm the judgment of the Franklin County Court of Common Pleas.
Judgment affirmed.
LAZARUS and PETREE, JJ., concur.